Jeffrey F. SPRANGERS, Plaintiff-Respondent,†

v.

GREATWAY INSURANCE COMPANY and Todd J. Zielke,
Defendants,

THRESHERMEN'S MUTUAL INSURANCE COMPANY,
Defendant-Petitioner,

LEARMAN-SHALLER POST 2732, V.F.W. CLUBHOUSE,
Defendant and Third-Party Plaintiff-Respondent,†

v.

The DIEDRICH AGENCY, INC., Third-Party Defendant-
Petitioner,

ABC INSURANCE COMPANY, Curt Mc Sweyn, Vikki Mc
Sweyn, and DEF Insurance Company, Third Party
Defendants.

Susan A. YOUNG, Individually and as Personal
Representative for the Estate of Martin J. Young,
Plaintiff-Respondent,†

v.

GREATWAY INSURANCE COMPANY and Todd J. Zielke,
Defendants,

THRESHERMEN'S MUTUAL INSURANCE COMPANY,
Defendant-Appellant,

---

† Petitions to review granted.

LEARMAN-SHALLER POST 2732, V.F.W. CLUBHOUSE,
Defendant-Third Party Plaintiff-Respondent,†

v.

The DIEDRICH AGENCY, INC., ABC Insurance Company,
Curt Mc Sweyn, Vikki Mc Sweyn, and DEF Insurance
Company, Third Party Defendants.

Court of Appeals

*No. 92–1617. Submitted on briefs February 2, 1993.—Decided
March 2, 1993.*

(Also reported in 498 N.W.2d 858.)

† Petition to review granted.

On behalf of the defendant-appellant, Threshermen's Mutual Insurance Company, the cause was submitted on the briefs of *James W. Mohr, Jr.* of *Mohr, Anderson & McClurg, S.C.* of Hartford.

On behalf of the defendant and third-party plaintiff-respondent, Learman-Schaller Post 2732, V.F.W. Clubhouse, the cause was submitted on the brief of *Steven L. Toney* of New London.

On behalf of the plaintiff-respondent, Jeffrey F. Sprangers, and the plaintiff-respondent, Susan A. Young, individually and as personal representative for the estate of Martin J. Young, the cause was submitted on the briefs of *Michael S. Sidall* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Threshermen's Mutual Insurance Company appeals a nonfinal order[1] denying its motion for summary judgment. Threshermen's argues that it has no duty to defend or indemnify Learman-Schaller Post 2732, V.F.W. Clubhouse (VFW), against the claims for negligent distribution of liquor to a minor. Threshermen's claims that the plain language of the insurance policy's liquor liability exclusion excludes coverage. We agree that the policy provides no coverage. The VFW also argues that it is entitled to reform the policy and that Threshermen's is estopped from denying coverage

---

[1] Leave to appeal was granted July 31, 1992.

because it failed to properly advise the VFW that it had no coverage for liquor liability. We reject these arguments and reverse the trial court's order denying Threshermen's motion for summary judgment.

Jeffrey Sprangers was injured and Martin Young was killed when a truck negligently operated by Todd Zielke collided with their motorcycles. Zielke had been drinking at the VFW before the accident. Both Young's estate and Sprangers sued the VFW, among others, and the two suits were consolidated. Each complaint alleged that the VFW was negligent in serving alcoholic beverages to Zielke, when it knew or should have known that he was under the legal drinking age, and that the VFW's negligence was a substantial factor in causing the accident and plaintiffs' injuries. The VFW's tavern is open to the public Thursdays, Fridays and most Saturdays from about two or three in the afternoon to two in the morning. Six of the VFW's eight employees are bartenders.

Threshermen's refused to defend the VFW, citing a liquor liability exclusion in the policy that read:

EXCLUSIONS

. . . This insurance does not apply to:

. . ..

c. "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

65

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

*This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.*

(Emphasis added.)

Threshermen's moved for summary judgment under the liquor liability exclusion. The trial judge denied the motion, stating that a better record on how the VFW was operated needed to be established to determine if the exclusion applied. Threshermen's petitioned for and received leave to appeal the nonfinal order denying its motion for summary judgment.

■When reviewing a summary judgment decision, we follow the same methodology as the trial court. *Kane v. Employer's Ins. of Wausau*, 142 Wis. 2d 702, 703, 419 N.W.2d 324, 325 (Ct. App. 1987). The first step requires us to examine the pleadings to determine whether a claim for relief has been stated and a material issue of fact presented. *Voss v. Middleton*, 162 Wis. 2d 737, 747, 470 N.W.2d 625, 628-29 (1991). If a claim for relief has been stated, inquiry then shifts to the moving party's affidavits or other proof to determine whether the moving party has made a prima facie case for summary judgment. *Id.* at 747-48, 470 N.W.2d at 629. If the moving party has made a prima facie case for summary judgment, we must examine the opposing party's affidavits and other proof to determine whether there exist disputed material facts or undisputed material facts from which reasonable alternative inferences may be drawn sufficient to entitle the opposing party to trial. *Id.* at 748, 470 N.W.2d at 629.

## LIQUOR LIABILITY EXCLUSION

There is no dispute that the complaint states a claim for relief. Additionally, there are no disputed material facts. The first issue, therefore, is whether the policy's liquor liability exclusion applies to deny coverage for the VFW. Interpretation of an insurance contract is controlled by the general contract principles of construction, *Lambert v. Wrensch,* 135 Wis. 2d 105, 115, 399 N.W.2d 369, 373 (1987), and is a question of law that we review independently of the trial court. *Cunningham v. Metropolitan Life Ins. Co.,* 121 Wis. 2d 437, 450, 360 N.W.2d 33, 39 (1985). The issue here is whether the liquor liability exclusion, which is limited to entities "in the business of . . . distributing, selling, serving or furnishing alcoholic beverages," applies to a nonprofit business such as the VFW. This question is one of first impression in Wisconsin.

It is fundamental that insurance policy language should be given its common everyday meaning and should be interpreted as a reasonable person in the insured's position would understand it. *Paape v. Northern Assur. Co.,* 142 Wis. 2d 45, 51, 416 N.W.2d 665, 668 (Ct. App. 1987). When a policy's terms are unambiguous and plain on their face, the policy must not be rewritten by construction. *Smith v. Atlantic Mut. Ins. Co.,* 155 Wis. 2d 808, 811, 456 N.W.2d 597, 599 (1990). Although ambiguity in policy language exists when the policy is reasonably susceptible to more than one construction from the viewpoint of a reasonable person of ordinary intelligence in the position of the insured, *Fletcher v. Aetna Cas. & Sur. Co.,* 165 Wis. 2d 350, 355, 477 N.W.2d 90, 91 (Ct. App. 1991), the fact that a word has more than one meaning does not make that word ambiguous if

67

only one meaning comports with the parties' objectively reasonable expectations. *United States Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 503, 476 N.W.2d 280, 282 (Ct. App. 1991).

The VFW and the plaintiffs argue that the term "business" is ambiguous because it could be used in one of two senses: (1) in a broad sense to mean any regular activity that occupies one's time and attention, with or without a direct profit objective, or (2) in a narrow sense to mean an activity with a direct profit objective. *Laconia Rod & Gun Club v. Hartford Acc. & Indem. Co.*, 459 A.2d 249, 251 (N.H. 1983). In support of this perceived ambiguity, the VFW and plaintiffs cite the New Hampshire court in *Laconia* and *American Legion Post No. 49 v. Jefferson Ins. Co.*, 485 A.2d 293, 294 (N.H. 1984), where it construed the term "business" in the applicable exclusion to apply only to activity with a profit motive, and therefore found the liquor liability exclusion did not apply to nonprofit entities. *See also Newell-Blais Post No. 443 v. Shelby Mut. Ins. Co.*, 487 N.E.2d 1371, 1373 (Mass. 1986) (nonprofit veterans organization incorporated for charitable purposes was not engaged in the "business" of selling or serving alcoholic beverages); *Zurich Ins. Co. v. Uptowner Inns, Inc.*, 740 F.Supp. 404, 407 (S.D. W.Va. 1990) ("to 'engage in business' means to embark on an activity for profit on a regular basis"), *aff'd (without published op.)*, 904 F.2d 702 (4th Cir. 1990).

However, courts in South Dakota and Washington have recently held that the liquor liability exclusion unambiguously includes as "businesses" nonprofit entities much like the VFW. In *McGriff v. United States Fire Ins. Co.*, 436 N.W.2d 859 (S.D. 1989), a plaintiff was injured in an auto accident caused by an individual who had just left the Eagles Club. The plaintiff alleged

the club had served alcoholic beverages to the individual when he was already intoxicated and failed to prevent him from driving when he left the premises. The Eagles Club sought coverage, contending that because the liquor liability exclusion's reference to "business" was ambiguous, coverage should be afforded. The South Dakota court emphasized that the proper analysis was not on the character of the organization, but rather on the activities it performs. *Id.* at 863. It concluded that the policy on its face clearly and specifically excluded from coverage liability arising out of the activity of operating a tavern year-round, whether it be for-profit or non-profit. *Id.*

A Washington appellate court agreed with the South Dakota court's focus on the insured's activities. In *Fraternal Order of Eagles v. General Acc. Ins. Co.*, 792 P.2d 178 (Wash. App. 1990), a plaintiff, hurt in an accident with a driver who was drinking at the Eagles Club shortly before the accident, sued the club alleging that it served liquor to the driver when it knew or should have known she was obviously intoxicated or an habitual alcoholic. The Eagles Club also contended that the reference to "business" in the liquor liability exclusion was ambiguous and therefore should not preclude coverage. The court disagreed, noting that the liquor liability exclusion is recognized generally as unambiguously applicable in policies covering taverns and bars. *Id.* at 181. After reviewing decisions of the South Dakota, New Hampshire and Massachusetts courts, the Washington court concluded that "[t]he policy, given a fair, reasonable and sensible construction, unambiguously excludes coverage." *Id.* at 183. It stated, "we view the phrase 'in the business' as limiting the exclusion's application to permanent, ongoing liquor sales operations, rather than

occasional events at which the insured may sell or serve liquor." *Id.* at 182-83.

We agree with the rationale of the Washington and South Dakota courts. The VFW operates exactly as any other bar or tavern would with the exception of the use of the tavern's profits. The destination of profits, or even the existence of such profits, is irrelevant to the parties of this insurance contract. For the purpose of the insurance contract, the VFW's activities and the concomitant risk of partaking in those activities are synonymous with, if not identical to those of other bars and taverns. The reasonable expectation of the VFW in entering its insurance contract was that it would be treated as any other bar or tavern entering into a similar agreement.

Although, as the VFW and the plaintiffs point out, two different meanings for the term "business" can be contemplated, we conclude that only the meaning that makes no differentiation between for-profit and non-profit entities comports with the parties' objectively reasonable expectations. *See Ace Baking Co.*, 164 Wis. 2d at 503, 476 N.W.2d at 282. Therefore, we conclude that the liquor liability exclusion unambiguously denies coverage, and Threshermen's is entitled to summary judgment on this point.

## REFORMATION

The VFW also argues that it is entitled to reform the policy to provide coverage. A cause of action for reformation of an insurance policy is allowed when the one seeking reformation shows that because of fraud or mutual mistake, the policy does not contain provisions desired and intended to be included. *Trible v. Tower Ins. Co.*, 43 Wis. 2d 172, 182, 168 N.W.2d 148, 154 (1969).

70

The VFW alleges no fraud, leaving mutual mistake as the only basis for reformation. When a policy of insurance is involved, mutual mistake is established when the party applying for insurance proves he made certain statements to the agent concerning the coverage desired, but the policy as issued did not provide the coverage desired. *Id.*

The VFW has stated a claim upon which relief can be granted. However, to show cause for reformation, the VFW must show that it made statements to the agent representing Threshermen's requesting coverage for liquor liability.

We first examine Threshermen's affidavits and other proof. This includes the deposition testimony of John Diedrich, the president of the insurance agency who wrote the VFW policies, and Jerry Kautzer, the insurance agent who specifically worked with the VFW and sold them the Threshermen's policies. Diedrich testified that liquor liability coverage such as that sought by VFW was not available from Threshermen's or any standard insurance company he did work for, and that in order for the VFW to get this coverage they would have had to go outside the standard market into the excess lines market. Kautzer testified that Threshermen's provided the coverages that he and the VFW requested. The testimony of Diedrich and Kautzer make a prima facie case that Threshermen's made no mistake in issuing the policy, and thus Threshermen's has made a prima facie case for summary judgment on the reformation issue.

We then look to the affidavits and other proofs of the VFW. The VFW showed, through the affidavit of VFW member Robert Plummer, that Harmon Byrum, now deceased, had primary responsibility for obtaining

the insurance coverage and that Byrum was instructed to obtain "full coverage." The VFW also produced minutes from a meeting reflecting that Byrum stated with regard to liability insurance from Threshermen's, "We are now fully covered." Plummer also testified as to his recollection of VFW meetings that Kautzer attended. With regard to a meeting before the accident, Plummer states, "I remember asking if we had liability insurance coverage for selling beer in the bar or the hall and Kautzer stated that we had coverage within the building." With regard to a meeting after the accident, Plummer states, "Kautzer told us that he had never previously mentioned that we were not covered for sales of alcohol because he did not think that VFW could afford it." Plummer admits that he does not remember Kautzer ever stating that there was coverage for motor vehicle accidents.

The VFW also presented evidence that Kautzer testified that at the time of the application for insurance, there was no discussion about the issue of liquor liability insurance. VFW member Glen Hidde testified that he understood that the VFW had full coverage and had insurance that covered it for the accident. He stated that the insurance agent (presumably Kautzer) said that the VFW had full coverage, but he did not know if the agent specifically mentioned coverage for underage drinkers. Hidde testified that the agent did not state at any meeting before the accident that the VFW did not have coverage for serving alcohol to an underage drinker who would get involved in an accident.

Even accepting all the evidence brought by the VFW as true, it has not refuted Threshermen's prima facie case that no mutual mistake was made. Regardless of the number of individual members of the VFW who

were mistaken as to the coverage, the VFW has not shown that Threshermen's was mistaken, or that the VFW asked for liquor liability coverage for serving intoxicants to minors. Consequently, there was no mutual mistake. Because they have not raised any proof regarding this material issue, whether Kautzer believed the VFW had liquor liability coverage for serving intoxicants to minors, we conclude that Threshermen's is entitled to summary judgment regarding the reformation issue.

## DUTY TO POINT OUT EXCLUSIONS

Finally, the VFW cites an unpublished California case, *Aetna Cas. & Sur. Co. v. Velasco*, 240 Cal. Rptr. 290 (Cal.App. 2d Dist. 1987), arguing that Threshermen's had an affirmative responsibility to advise the VFW that the policy contained an exclusion related to sales of alcoholic beverages to minors. At trial, the VFW raised this argument only in its action against the Diedrich Agency, and now seeks to apply it to Threshermen's. In addition to the fact that generally arguments not raised in the trial court will not be considered on appeal, *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980), the VFW's argument is not persuasive. In *Nelson v. Davidson*, 155 Wis. 2d 674, 682, 456 N.W.2d 343, 346 (1990), the Wisconsin Supreme Court refused to impose on an insurance company or agent an affirmative duty to advise insureds about the availability and advisability of underinsured motorist coverage. Likewise, we refuse to impose an extra-contractual affirmative duty on an insurer to explain each and every exclusion to each insured in the absence of any such request. Because the VFW's third contention fails to state a claim upon which relief can be granted,

73

Threshermen's is entitled to summary judgment as to this claim.

*By the Court.*—Order reversed and cause remanded.