194 N.J. Super. 320 (1984)
476 A.2d 880
E. KENNETH BURDGE, PLAINTIFF-RESPONDENT,
v.
EXCELSIOR INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1984.
Decided June 13, 1984.
*321 Before Judges BOTTER, PRESSLER and O'BRIEN.
William J. Pollinger argued the cause for appellant (DeLorenzo & Pollinger, attorneys; William J. Pollinger, of counsel and on the brief).
Michael G. McNamara argued the cause for respondent (Francis P. Piscal, attorney; Michael G. McNamara, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The question raised by this appeal is whether campaign activities engaged in by a public office-holder seeking re-election are within the scope of the typical business-pursuits exclusion of a liability policy. We affirm the summary judgment entered by the Superior Court, Law Division, holding that this policy exclusion does not apply to reelection campaign activities.
In September 1980 plaintiff E. Kenneth Burdge held the constitutional office of County Clerk of Ocean County and was *322 then engaged in conducting his reelection campaign. A large billboard had been erected at the intersection of Routes 527 and 547 in Jackson Township by the Ocean County Republican Party urging the election of Burdge and other Republican Party candidates. For purposes of the issue before us, we assume that Burdge, if he did not himself erect the sign, nevertheless authorized its erection on his behalf.
On September 30, 1980, Frances Primiterra, while operating her vehicle, collided with another vehicle at that intersection. She and her husband, who sued per quod, commenced an action against the owner and driver of the other vehicle and against a group of other defendants, including Burdge. The theory of the cause of action against Burdge was that the campaign sign had been negligently erected in a manner which "obstructed, distracted and impaired" Primiterra's vision and hence that Burdge, on whose behalf and with whose authorization the sign had been placed, was responsible for her ensuing injury. Burdge called upon his carrier, defendant Excelsior Insurance Company, who had issued a homeowner's policy to him, to defend the action. Defendant disclaimed, relying on the business-pursuits exclusion. Burdge retained his own attorney to defend the Primiterra action and that action was dismissed as to him by summary judgment. Burdge then brought this action against defendant, claiming that it had been obligated to provide him with a defense to the Primiterra action and, having failed to fulfill that obligation, was liable to him for reimbursement of the legal expenses he had incurred in successfully defending it. The trial court, on Burdge's motion for summary judgment, concluded as a matter of law that the exclusion did not apply. Accordingly, it entered judgment in Burdge's favor in the amount of $6,245, representing the legal fees incurred by him both in the defense of the Primiterra action and in the prosecution of this action. See R. 4:42-9(a)(6). Defendant appeals only from the adjudication that it was obligated to defend Burdge in the Primiterra action. It does not challenge *323 either the reasonableness of the fees or its obligation to pay them in the event of coverage.
The policy issued by defendant to plaintiff included the following "plain language" liability coverage:
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the insured is legally liable; and
b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.
The coverage, however, expressly excluded bodily injury or property damage "arising out of business pursuits of any insured." Excepted from the exclusion were "activities which are ordinarily incident to non-business pursuits." "Business" was defined by the policy as including a "trade, profession or occupation."
Defendant's contention is that since Burdge's profession or occupation was that of County Clerk, the campaign activities in which he engaged in order to retain that office constituted a business pursuit within the intent of the exclusionary clause. We disagree.
We do not doubt that the actual conduct by the incumbent of the affairs and duties of the office of County Clerk would constitute business pursuits within the intendment of the policy exclusion. Nor do we doubt that actions by the County Clerk as County Clerk would similarly invoke the exclusion's applicability. However, in our view campaign activities of an office seeker do not constitute business pursuits within the intendment of the policy whether those activities are engaged in by an incumbent office-holder successfully seeking reelection, by an incumbent office-holder unsuccessfully seeking reelection, or by a candidate seeking initial election to office. We are satisfied that while these campaign activities may result in the candidate's obtaining a "profession or occupation," they cannot themselves be regarded as activities conducted in the performance *324 of that profession or occupation. In our view, activities in pursuit of the profession or occupation conferred by election to a public office can only be engaged in by one who has gained the office and is undertaking the duties of the office.
It is clear that campaign activities of candidates for public office enjoy a special constitutional protection and status whether or not the candidate is ultimately successful and whether or not he is an incumbent. As Chief Justice Hughes observed in In re Gaulkin, 69 N.J. 185, 191 (1976), "It goes without saying that our system of government is predicated upon the premise that every citizen shall have the right to engage in political activity. It is a basic freedom enshrined in the First Amendment." We are therefore persuaded that political activity engaged in by a candidate for public office constitutes an exercise of his personal and political rights, not a business activity. The pursuit of election to political office is not therefore either a "business pursuit" of the candidate or a "business pursuit" of the office to which he seeks election.
No reported opinion dealing with the applicability of the business exclusion clause to election campaigning has been brought to our attention. Nor has our own research disclosed any prior judicial consideration of this subject. See cases collected in Annot., "Construction and Application of `Business Pursuits' Exclusion Provision in General Liability Policy," 48 A.L.R.3d 1096 (1973) and supplemental service. However, in the context of this policy exclusion, a distinction between the business pursuit of an office-holder and those of his activities which constitute constitutionally protected political activity was recognized in Ritter v. U.S. Fidelity and Guaranty Co., 573 F.2d 539 (8th Cir.1978).
In Ritter, the plaintiff-insured, while the mayor of Springdale, Arkansas, placed an advertisement in the local newspaper expressing his views on a public question. He was sued for libel by a community association which advocated a position on that public question contrary to that expressed by the mayor in *325 his advertisement. The mayor called upon his liability carrier to defend him in the libel action. The carrier refused to do so, relying on the business-pursuits exclusion of the policy. The court concluded that the exclusionary clause, which made no reference at all to political activity, could not be construed to apply to the "political functions integral to the performance of an elected public office...." 573 F.2d at 543. Clearly, therefore, whether or not the mayor's conduct of the business of his office would have constituted a business pursuit within the exclusion, Ritter held that his political expression while holding the mayoral office did not.
We need not determine whether we agree with the Ritter holding insofar as it applies to the political activity of a public official which is related to the actual conduct of the duties of his office. We are, however, satisfied that, at the least, Ritter lends support to our view that the political activity of a candidate does not constitute a business pursuit related to the performance of the duties of the office to which he seeks election and that it is only the performance of those duties, namely, the actual conduct of governmental affairs, which is comprehended by the business-pursuits exclusion.
In determining the applicability of the exclusionary clause of this policy to the circumstances here, we must be guided by the general principle that policy provisions respecting coverage are to be construed liberally in favor of the insured. Bryan Const. Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972); Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961); Aetna Ins. Co. v. Weiss, 174 N.J. Super. 292, 296 (App.Div. 1980), certif. den. 85 N.J. 127 (1980). Application of this principle reinforces our conclusion that the campaign activities which constituted the gravamen of the Primiterra complaint against Burdge were not within the reasonable contemplation of the business-pursuits exclusion. To the contrary, we are satisfied that because of the independent significance and status of political activity by candidates for public *326 office, the conduct of a reelection campaign constitutes an activity "ordinarily incident to non-business pursuits" within the intendment of the policy's express exception to the business-pursuits exclusion. Cf. N.J. Property Liab. Guar. Ass'n v. Brown, 174 N.J. Super. 629 (App.Div. 1980), certif. den. 85 N.J. 462 (1981).
In the absence in this policy of an exclusion for loss arising out of political activity, the policy must be construed as affording coverage therefor. Consequently, based on the allegations of the complaint against Burdge, defendant had an obligation to defend. See Burd v. Sussex Mutual Ins. Co., 56 N.J. 383 (1970).
Affirmed.